IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD BANSEK, ET AL., | ) | Case No. 1:03 CV1015 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Judge Ann Aldrich |
| | ) | |
| ALCOA, ET AL. | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM AND ORDER |

Plaintiffs, a group of employees in the Heat Treat department of ALCOA Wheel & Forged Products, bring this action against their employer and their labor union, claiming breach of their collective bargaining agreement, breach of the duty of fair representation, and various violations of state and common law. Now before the court are motions for summary judgment filed by defendants ALCOA and ALCOA Wheel & Forged Products (collectively, "Alcoa")(Docket No. 59) and International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) and UAW Local 1050 (collectively, "the Union defendants")(Docket No. 60). For the following reasons, the court grants both motions and enters summary judgment in favor of all defendants.

**I. Background**

Plaintiffs Bansek, Biros, Ryan, and Wilson (collectively, "Bansek") are employees at ALCOA Wheel and Forge Products, Cleveland Works, and members of the defendant Union. In June of 2002, Alcoa and the Union signed a memorandum of understanding ("the Noble Agreement") concerning the seniority of Shirley Noble, an employee not a party to this case.

Noble began work with Alcoa on January 3, 1995. She resigned from her position in May of 1996, when personal problems interfered with her ability to work, and was rehired by Alcoa on August 5, 1996. During the 2002 discussions between Alcoa and the Union, Human Resources personnel acknowledged that many employees may not have been properly counseled regarding their rights under the Family and Medical Leave Act, 28 U.S.C. § 2601, *et seq*. ("FMLA"). As one such employee, Noble may have forfeited her seniority unnecessarily, by resigning when she could have instead applied for FMLA leave. Under the Noble Agreement, Noble's original seniority date of January 3, 1995, was reinstated.

Bansek filed this action on May 27, 2003, and amended his complaint on October 14, 2003. The amended complaint alleges that, by entering into the Noble Agreement, the Union breached its duty of fair representation and Alcoa violated both the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and the existing collective bargaining agreement ("CBA"). The amended complaint also includes state law claims of sex discrimination, fraud, and tortious interference with employment contracts.

On May 15, 2004, this court denied a motion to dismiss filed by the union defendants (Docket No. 43). This motion sought dismissal solely on the basis of timeliness. The Court found that the union had not conclusively demonstrated that the plaintiffs had notice of the Noble agreement at a sufficiently early date to render their filing untimely. On August 5, 2004, the court granted Alcoa's motion to dismiss (Docket No. 34) in part, dismissing the plaintiffs' claims of gender discrimination, fraud, and tortious interference with contract. The court simultaneously denied Alcoa's motion to dismiss the plaintiffs' claims of violation of ERISA and breach of the collective bargaining agreement, permitting the case to

proceed as both an ERISA action and a "hybrid" action under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

## II. Discussion

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir.2004).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view the evidence in a light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. Determination of whether an issue is "genuine" requires consideration of

the applicable evidentiary standards. Thus, in most civil cases, the court must decide whether the evidence is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252.

Alcoa and the Union defendants argue that no genuine issue of material fact remains regarding the plaintiffs' surviving ERISA and LMRA claims. The court will consider each of these claims in turn.

**A. ERISA**

The provisions of ERISA give the federal courts jurisdiction over certain categories of disputes concerning the management of employee retirement plans. The plaintiffs in this case seek a judgment to redress Alcoa's alleged interference with their "futuristic [*sic*] pension rights." Alcoa expresses some understandable confusion as to whether this action is properly considered one for breach of fiduciary duty under 29 U.S.C. § 1109, or one for denial of benefits under 29 U.S.C. § 1132.

The court will address Bansek's claims under § 1132, since the individual damages sought in this matter may not be granted under §1109. Section 1109 allows suits for breach of fiduciary duty to proceed only when brought on behalf of a retirement plan itself:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries ... shall be personally liable to make good *to such plan* any losses to the plan resulting from each such breach, and to restore *to such plan* any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary ...

29 U.S.C. § 1109 (emphasis added). "Suits under ERISA for breach of fiduciary duty arise under 29 U.S.C.§ 1132(a)(2), which allows beneficiaries of a plan to seek relief under 29 U.S.C. § 1109 ... Conversely, individual suits for recovery of denied benefits arise under 29 U.S.C. § 1132(a)(1)(B)."

-4-

*Adcox v. Teledyne*, 21 F.3d 1381, 1390 (6th Cir. 1994), citing *Bryant v. International Fruit Product Co.*, 886 F.2d 132, 135 (6th Cir. 1989). Where, as here, "plaintiffs seek recovery on their own behalf, not on behalf of the plan," dismissal of any and all § 1109 claims is appropriate. *Id*.

Additionally, the court finds that Alcoa has carried its burden to demonstrate a lack of genuine issues of material fact arising under § 1132. Alcoa directs the court's attention to deposition testimony in which each of the plaintiffs acknowledges that he has not been denied any benefits as a result of the reinstatement of Noble's seniority. Bansek does not seek the kind of declaratory relief explicitly contemplated by § 1132's right of action "to clarify [one's] rights to future benefits," nor does he present any specific facts in support of his claim to compensable "futuristic" harm. (Indeed, advancement of a claim for non-speculative current losses would require the appropriate showings regarding both Article III ripeness and exhaustion of administrative remedies. From the record before the court, it is not at all clear that the plaintiffs are prepared to clear these hurdles.) The court therefore credits Alcoa's argument that Bansek's ERISA claims consist of no more than conclusory and unsupported allegations, and finds that Bansek has failed to present evidence sufficient to survive summary judgment on any potential ERISA claim.

**B. LMRA Claims**

With regards to Bansek's claims that Ford breached the relevant CBA, and that the Union breached its duty of fair representation, the court finds that both defendants, Alcoa and the Union, have demonstrated the absence of any remaining issue of material fact. In its motion for summary judgment, Alcoa explains that Section 41 of the CBA allows the company to enter into agreements with the Union that "conflict with or supersede" previous CBA provisions. Alcoa then details, in simple and uncontroverted fashion, how the reinstatement of Shirley Noble's seniority was done to redress the

company's past failures to inform employees of their rights underFMLA. Alcoa apparently believed that Noble had quit her job under the mistaken impression that she was not eligible for leave under FMLA. Alcoa then acted to remedy this oversight, working in concert with the Union to place Noble in the position she would have been in had she invoked FMLA instead of quitting. Alcoa has demonstrated that the Union agreed to Noble's reinstatement, and that the Noble Agreement was therefore valid under Section 41 of the CBA.

In response to the evidence presented by Alcoa, Bansek argues that the company's reasoning is "pretextual" and "a form of reverse discrimination," and adds some irrelevant factual allegations concerning Noble's personal life. None of this material is sufficient to carry Bansek's burden to re-establish the existence of a genuine issue of material fact regarding breach of the relevant CBA.

Similarly, the Union has demonstrated the absence of a genuine issue of material fact regarding Bansek's claim of breach of the duty of fair representation. The Union has submitted facts and argument tending to show that the plaintiffs failed to exhaust their intra-union and administrative remedies before filing suit, a threshold requirement for maintenance of an action for breach of the duty of fair representation. *See Clayton v. International Union*, *UAW*, 451 U.S. 679 (U.S. 1981); *Anderson v. Ideal Basic Industries*, 804 F.2d 950 (6th Cir. 1986); *Monroe v. International Union, UAW*, 723 F.2d 22 (6th Cir. 1983). The terms of the Union's Constitution require that individual members appeal local Union actions and decisions to "the unit of an Amalgamated Local Union, then to the Union; then to the International Executive Board and then to the Convention Appeals Committee, or where appropriate the Public Review Board." Bansek concedes that the plaintiffs did not take any of these steps following their steward's refusal to file a grievance against the Noble Agreement.

Instead, Bansek seeks exemption from the exhaustion requirement under *Clayton*. In *Clayton*, the Supreme Court held that a court has discretion to grant such exceptions if it finds that

> union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim ... the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks ... [or] exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim.

451 U.S. at 689. Bansek has not carried his burden to establish any of these conditions. The plaintiffs do not attempt to demonstrate inadequacy of internal procedures or unreasonable delay. Instead, they follow some puzzling citations on the difficulty of satisfying *Clayton*'s hostility requirement with a blanket assertion that Union officials were uncooperative at the earliest stages of their objections to the Noble Agreement. Bansek places great weight on the statements by Union officials that they could not grieve a decision to which the Union was a party, but does not follow this argument with any justification for the decision not to proceed with the "unit of an Amalgamated Local Union" stage of the intra-union process. Because Bansek has failed to demonstrate a genuine issue of material fact regarding this threshold requirement, summary judgment is appropriate on this claim.

### III. Conclusion

For the foregoing reasons, the court hereby grants both motions for summary judgment (Docket Nos. 59 & 60), and enters judgment in favor of all defendants. The outstanding motion for leave to intervene as a party (Docket No. 69) is denied as moot.

This order is final and appealable.

IT IS SO ORDERED.

                                          s/Ann Aldrich
                                          ANN ALDRICH
                                          UNITED STATES DISTRICT JUDGE

Dated: February 23, 2006